AO 106 (Rev. 06/09) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
for the
Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

One black IPhone cellular telephone
placed in evidence bag A5376708

)
)
)
)   Case No.
)
)
)

**FILED**
JUL 25 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

'19 MJ 3119

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:
See Attachment A-1.

located in the ____Southern____ District of ____California____, there is now concealed *(identify the person or describe the property to be seized)*:
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
☑ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 8 U.S.C. 1324 | Transportation of Illegal Aliens |

The application is based on these facts:
See Affidavit of Border Patrol Agent Cory Anderson, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.
☐ Delayed notice of ____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
Applicant's signature

Cory Anderson, U.S. Border Patrol
Printed name and title

Sworn to before me and signed in my presence.

Date: 7.25.2019 @ 9:10 a.m.

_____
Judge's signature

City and state: San Diego, CA

Hon. Peter C. Lewis U.S. Magistrate Judge
Printed name and title

# AFFIDAVIT

I, Cory Anderson, United States Border Patrol Agent, having been duly sworn, depose and state as follows:

## INTRODUCTION

1. I make this affidavit in support of an application for a search warrant for (1) one black IPhone cellular telephone placed in evidence bag A5376708 (**Target Device 1**) seized from defendant Brandon Enrique MIRANDA-Enriquez; (2) one white IPhone cellular telephone placed in evidence bag A5376707 (**Target Device 2**) seized from defendant Brenden Shane SAN NICOLAS (collectively, Defendants); (3) one black Alcatel cellular telephone placed in evidence bag A5376709 (**Target Device 3**) seized from material witness Elfegio MARCIAL-Martinez; and, (4) one black Alcatel cellular telephone placed in evidence bag A5376710 (**Target Device 4**) seized from material witness Salvador CRUZ-Francisco. **Target Device 1** and **2** were seized from Defendants on or about May 9, 2019, incident to their arrests for transporting illegal aliens MARCIAL and CRUZ (collectively, the Material Witnesses) in violation of 8 U.S.C. § 1324 within the Southern District of California. **Target Device 3** and **4** also were seized on or about May 9, 2019, from MARCIAL and CRUZ incident to their arrests as material witnesses. **Target Device 1, 2, 3,** and **4** (collectively, the **Target Devices**) are in the possession of the United States Border Patrol. The **Target Devices** are further described in Attachments A-1, A-2, A-3, and A-4, incorporated herein by reference.

2. I seek authority to search the **Target Devices** for evidence of crimes, specifically violations of Title 8, United States Code, Section 1324, further described in Attachment B, incorporated herein by reference.

3. Because this affidavit is being submitted for the limited purpose of establishing probable cause in support of the application for a search warrant, it does not set forth every fact that I or others have learned during the course of this investigation. The information contained in this Affidavit is based upon my personal observations and

1

knowledge, my review of various official reports, and upon conversations with other Border Patrol Agents. Dates and times are approximate.

## EXPERIENCE AND TRAINING

4. I am a United States Border Patrol Agent and have been so employed since 2008. I am currently assigned to the San Diego Sector Boulevard Station, and I am currently a member of the Boulevard Station Abatement Team. I am a graduate of the Border Patrol Basic Academy at the Federal Law Enforcement Training Center in Artesia, New Mexico and a Federal Law Enforcement Officer within the meaning of Rule 41(a)(2)(C) of the Federal Rules of Criminal Procedure. I am authorized by Rule 41(a) of the Federal Rules of Criminal Procedure to make applications for search and seizure warrants and serve arrest warrants. I have experience in and have received training with respect to conducting investigations of violations of Titles 8, 18, 19, and 21 of the United States Code.

5. In the course of my duties as a Border Patrol Agent, I investigate and prepare cases for prosecution against persons involved in the inducement of the illegal entry of undocumented aliens into the United States; the smuggling of undocumented aliens into the United States; and the transportation and harboring of undocumented aliens within the United States.

6. During my tenure as a Border Patrol Agent, I have participated in the investigation of a number of cases involving the smuggling of aliens from Mexico into the United States and transportation of illegal aliens within the United States, which have resulted in the issuance of arrest warrants, search warrants, seizure warrants, and the indictments of persons for alien smuggling, including drivers, passengers, and guides.

7. Through the course of my training, investigations, and conversations with other law enforcement personnel, I am aware that it is a common practice for alien smugglers to work in concert with other individuals and to do so by utilizing cellular telephones to maintain communications with co-conspirators and/or illegal aliens in order to further their criminal activities. The smuggling of aliens generates many types of

evidence, including, but not limited to, cellular phone-related evidence such as voicemail messages referring to the arrangements of travel, names, photographs, text messaging (via SMS or other applications), and phone numbers of co-conspirators and illegal aliens. For example, drivers and passengers responsible for transporting illegal aliens are typically in telephonic contact with co-conspirators immediately prior to and/or following the crossing of the illegal aliens at the border, at which time they receive instructions, including where to pick-up the illegal aliens for transportation into the United States and where to take the illegal aliens after crossing into the United States. These communications may also include locations for delivery to stash houses and/or sponsors. Illegal aliens also are typically in telephonic contact with co-conspirators prior to and following their crossing in order to make smuggling arrangements, receive instructions, and report their locations after crossing.

8. In preparing this affidavit, I have conferred with other agents and law enforcement personnel who are experienced in the area of alien smuggling investigations, and the opinions stated below are shared by them. Based upon my training and experience as a Border Patrol Agent, and consultations with law enforcement officers experienced in alien smuggling investigations, I am also aware that:

    a. Alien smugglers and aliens often will use cellular telephones because they are mobile, and they afford instant access to telephone calls, text, web, and voice messages.

    b. Alien smugglers often will use cellular telephones because they are able to monitor the progress of the aliens while the conveyance is in transit.

    c. Alien smugglers and aliens often will use cellular telephones to make smuggling arrangements, including synchronizing a drop off and/or pick up location and time.

    d. Alien smugglers will often use cellular telephones to notify or warn their accomplices of law enforcement activity.

//

3

## FACTS SUPPORTING PROBABLE CAUSE

9. On May 9, 2019, at approximately 9:15 a.m., I was parked in an unmarked vehicle near the intersection of Ribbonwood Road and Old Highway 80 and noticed a light-colored 2005 Chevy Tahoe (vehicle) bearing California license plates and with stickers or decals on the back window travel south on Ribbonwood Road and turn east on Old 80. This area is located approximately 20 miles east of the Tecate, California Port of Entry and 4.5 miles north of the border. I had not previously observed the vehicle in the area. The area is a sparsely populated mountainous region and a known smuggling corridor given the close proximity of the area to the border and to Old Highway 80 and Interstate 8 (I-8). Specifically, Old Highway 80 and I-8 cross east and west through the area, and there are numerous dirt roads between the highways and the border that provide access to the highways.

10. Approximately 45 minutes after first observing the vehicle, I observed it return traveling west on Old Highway 80 and turning north on Ribbonwood Road. I decided to follow the vehicle and saw it turn east on I-8, away from the checkpoint, which was operational at the time.

11. I am familiar that, when the checkpoint is operational, load drivers will often travel in the opposite direction of the checkpoint in order to leave illegal aliens at stash houses or other locations until the checkpoint closes. I alerted other border patrol agents in the area of my observations.

12. Border Patrol Agent Mares who heard the alert responded that he also had observed the same vehicle in the town of Jacumba Hot Springs, several miles to the east, after I had first observed the vehicle. Agent Mares reported that, at that time, he only saw the driver of the vehicle. Jacumba Hot Springs is located immediately adjacent (less than one-quarter of a mile) to the border.

13. As I followed the vehicle, I noticed the silhouette of a person in the back seat. I requested record checks for the vehicle, which identified the vehicle as being registered in Menifee, California in Riverside County over 120 miles away. At the time of this

4

incident, I had encountered several load vehicles registered out of Riverside County. Based upon the totality of my observations, I believed that I was observing a smuggling event, and so I requested a marked vehicle to perform a vehicle stop. Border Patrol Agent Rubio acknowledged my request.

14. Before the vehicle stop could occur, the vehicle exited I-8. Agent Mares who was positioned at the exit in an unmarked vehicle observed the vehicle pull up to the gas pumps at a gas station and re-enter I-8 going eastbound a short time later. This is a known tactic often used by smugglers to see if they are being followed by law enforcement.

15. A short while later, the vehicle passed Agent Rubio who was in a marked vehicle. He saw the passengers in the back seat of the vehicle attempt to lay down and hide as they passed his location. Agent Rubio then conducted the stop, and I assisted. When I approached the vehicle, I observed MIRANDA in the driver's seat and SAN NICOLAS in the passenger's seat. I also noticed two individuals crouched down in the backseat with pieces of cloth or "booties" tied to their shoes. Both backseat passengers confirmed that they were citizens of Mexico without documents permitting them to be in the United States. The four individuals were placed under arrest.

16. The **Target Devices** were seized from each person at the time of their arrests. Each person also claimed ownership of their respective **Target Device** as identified above. Additionally, SAN NICOLAS and material witness Salvador CRUZ-FRANCISCO gave consent for their cellular telephones to be searched, although none of the **Target Devices** have been searched.

17. Post-arrest, MIRANDA invoked. SAN NICOLAS elected to speak to agents. He stated that he and MIRANDA had left Temecula, California at approximately 6:00 a.m. to travel to Arizona. Along the way, they decided to site-see in the Jacumba Hot Springs area. SAN NICOLAS stated that they exited at the Jacumba Hot Springs exit and traveled west toward Jacumba. After passing Jacumba and still heading west, they encountered two individuals standing on the side of the road asking for a ride. He admitted that he and MIRANDA knew they were illegal aliens based upon their appearance but decided to stop.

SAN NICOLAS further stated that, upon entry in the vehicle, one of the aliens handed SAN NICOLAS a cellular phone, and he communicated with an unknown person on the line. MIRANDA acted as a translator because SAN NICOLAS is not fluent in Spanish. The unknown man offered them $1,200 to transport the illegal aliens to El Centro, California, and they accepted.

18. Post-arrest, the Material Witnesses each admitted that they are citizens of Mexico without documents to enter or reside in the United States. Each stated that they were paying others to be smuggled into the United States. Neither were able to identify MIRANDA or SAN NICOLAS.

19. The Material Witnesses, accompanied by their attorney, also were separately interviewed by myself and counsel for the United States on June 28, 2019. During that meeting, both stated that they had jumped the border fence with the help of an unknown smuggler who had placed foot coverings on their shoes and instructed them where to go. The smuggler told them that a grey vehicle[1] would pick them once they arrived near the paved road. They further stated that they crawled from the border to the hiding spot where they hid until a grey vehicle arrived and stopped approximately 10 meters from their location. After it stopped, they ran to get into the vehicle. The Material Witnesses stated that they observed SAN NICOLAS on the phone when they entered the vehicle, although they could not understand the conversation because it was in English. Both denied providing their cellular telephones to MIRANDA or SAN NICOLAS.

20. Based upon my experience and investigation in this case, I believe that MIRANDA, SAN NICOLAS, the Material Witnesses, and other persons, as-yet-unknown, were involved in an alien smuggling venture and that Defendants and the Material Witnesses used the **Target Devices** to coordinate with the as-yet-unknown persons to bring

---

[1] Reports variously describe the load vehicle, which was very dirty on the date of the offense and is rusted on the hood, as "light-colored" and "gold." During the meeting on June 28, 2019, the Material Witnesses stated that the vehicle that they were apprehended in appeared to them to be grey in color, and the vehicle is, in fact, grey. *See* Attachment C.

the aliens into the United States and/or transport them further into the United States. Additionally, I believe that recent calls made and received, telephone numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text messages, pictures, and other digital information are stored in the memory of the **Target Devices**, which may identify other persons involved in alien smuggling activities.

21. I am aware that smuggling conspiracies require planning to successfully evade detection by law enforcement. In my professional training and experience, this may require planning and coordination in the days and weeks prior to the event. Additionally, co-conspirators are often unaware of the subject's arrest and will continue to attempt to communicate with the subject after the arrest to determine their whereabouts. Given this, I respectfully request permission to search the **Target Devices** for data beginning on April 9, 2019, up to and including May 9, 2019.

## METHODOLOGY

22. It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books, and can be mini-computers allowing for electronic mail services, web services, and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode," which disables access to the network. Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and, instead, store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be

7

acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

23. Following the issuance of this warrant, I will collect the **Target Devices** and subject them to analysis. All forensic analysis of the data contained within the **Target Devices** and their memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

24. Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days absent further application to this Court.

## CONCLUSION

25. Based on all of the facts and circumstances described above, I believe that probable exists to conclude that Defendants and the Material Witnesses used the **Target Devices** to facilitate the offense of alien smuggling. The **Target Devices** likely were used to facilitate the offense by transmitting and storing data, specifically that described in Attachment B, which constitutes evidence of violations of Title 8, United States Code, Section 1324. I also believe that probable cause exists to believe that evidence of illegal activity committed by Defendants and others continues to exist on the **Target Devices**. Therefore, I respectfully request that the Court issue this warrant.

//
//
//
//
//

8

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Cory Anderson
Border Patrol Agent
U.S. Border Patrol

Subscribed and sworn to before me this __25th__ day of July 2019.

_____
HONORABLE PETER C. LEWIS
United States Magistrate Judge

9

## ATTACHMENT A-1
PROPERTY TO BE SEARCHED

The following property is to be searched:

**One black IPhone cellular telephone**
Placed in evidence bag A5376708
**(Target Device 1)**

**Target Device 1** is currently in the possession of United States Border Patrol Asset Forfeiture Office Evidence Vault, located at 311 Athey Ave, San Ysidro, California.

## **ATTACHMENT A-2**
PROPERTY TO BE SEARCHED

The following property is to be searched:

> **One white IPhone cellular telephone**
> Placed in evidence bag A5376707
> **(Target Device 2)**

**Target Device 2** is currently in the possession of United States Border Patrol at Asset Forfeiture Office Evidence Vault, located at 311 Athey Ave, San Ysidro, California.

## ATTACHMENT A-3
### PROPERTY TO BE SEARCHED

The following property is to be searched:

**One black Alcatel cellular telephone**
Placed in evidence bag A5376709
**(Target Device 3)**

**Target Device 3** is currently in the possession of United States Border Patrol at Asset Forfeiture Office Evidence Vault, located at 311 Athey Ave, San Ysidro, California.

## ATTACHMENT A-4
PROPERTY TO BE SEARCHED

The following property is to be searched:

**One black Alcatel cellular telephone**
Placed in evidence bag A5376710
**(Target Device 4)**

**Target Device 4** is currently in the possession of United States Border Patrol at Asset Forfeiture Office Evidence Vault, located at 311 Athey Ave, San Ysidro, California.

## **ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the mobile telephones described in Attachments A-1, A-2, A-3, and A-4 includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the **Target Devices** for evidence described below.

The evidence to be seized from the mobile telephones will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data limited to the time period of April 9, 2019, to May 9, 2019, and is limited to the following:

a. tending to reflect planning of and/or involvement in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

b. tending to identify other facilities, storage devices, or services – such as email addresses, IP addresses, and/or phone numbers – that may contain electronic evidence tending to indicate efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in efforts to bring illegal aliens into the United States from Mexico and transport them within the United States;

d. tending to identify travel to or presence at locations involved in efforts to smuggle illegal aliens into and through the United States;

e. tending to identify the user of, or persons with control over or access to, the **Target Devices**;

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of the transportation of illegal aliens in violation of 8 U.S.C. § 1324.

## ATTACHMENT C
### THE LOAD VEHICLE



